IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| PLANNED PARENTHOOD MINNESOTA, NORTH DAKOTA, SOUTH DAKOTA, and CAROL E. BALL, M.D.; | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CASE NO. 11-4071 |
| DENNIS DAUGAARD, Governor, MARTY JACKLEY, Attorney General, DONEEN HOLLINGSWORTH, Secretary of Health, Department of Health, and MARGARET HANSEN, Executive Director, Board of Medical and Osteopathic Examiners, in their official capacities, | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

FILED
MAY 27 2011
[signature] CLERK

## COMPLAINT

Plaintiffs Planned Parenthood Minnesota, North Dakota, South Dakota ("Planned Parenthood"), and Carol E. Ball, M.D., by and through their undersigned counsel, bring this Complaint against the above-named Defendants, their employees, agents, and successors in office, and in support thereof state the following:

1. This is a constitutional challenge under 42 U.S.C. § 1983 to South Dakota H.B. 1217, 2011 Leg. Reg. Sess. (S.D. 2011), to be codified in South Dakota Codified Laws Chapter 34-23A ("Act"). Under the pretext of ensuring "voluntary, uncoerced, and informed" consent to abortion, the Act seeks to restrict women's access to abortion services in South Dakota by, among other things, (1) imposing the longest and most extreme mandatory delay in the country; (2) forcing every woman who seeks an abortion to disclose and discuss her most private personal and medical information with an unlicensed, non-medical organization that is opposed to her decision; (3)

requiring physicians to engage in an unworkable "risk factors" assessment that is not only a drastic departure from accepted medical practice but also impossible for any physician to satisfy; and (4) defining "coercion" in such broad terms as to obstruct abortion in common situations where the woman's decision is voluntary and not coerced. A copy of the Act is attached hereto as Exhibit A.

2. The Act is scheduled to take effect on July 1, 2011.

3. If the Act takes effect, it will deny, among other things, Plaintiffs' patients their constitutional right to decide whether to have a child, as well as their patients' and physicians' First Amendment freedoms and their patients' right to informational privacy; and subject Plaintiffs and their physicians to significant licensing penalties, including revocation of Planned Parenthood's license to operate a health care facility in Sioux Falls and its physicians' licenses to practice medicine, as well as criminal and civil penalties. To avoid this irreparable harm, Plaintiffs seek declaratory and injunctive relief against the Act.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343.

5. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, Rules 57 and 65 of the Federal Rules of Civil Procedure, and the general legal and equitable powers of this Court.

6. Venue is appropriate under 28 U.S.C § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurs in this judicial district.

## PARTIES

7. Plaintiff Planned Parenthood Minnesota, North Dakota, South Dakota is a not-for-profit Minnesota corporation registered as a foreign corporation doing business in South Dakota. Planned Parenthood operates a health center in Sioux Falls, South Dakota, which is licensed by the

South Dakota Department of Health. The Sioux Falls health center provides a broad range of reproductive health services, including physical exams, pregnancy testing and options education, contraception and contraceptive education, testing for HIV and sexually transmitted infections ("STI") and STI treatment, screening for cervical and breast cancer, and abortion. Planned Parenthood's physicians who perform abortions at the Sioux Falls health center, including Dr. Ball, are licensed to practice medicine in South Dakota by the South Dakota Board of Medical and Osteopathic Examiners. Plaintiffs sue on their own behalf and on behalf of Planned Parenthood's current and future physicians, employees, staff, servants, officers, and agents who participate in abortions, and on behalf of their current and future patients seeking abortion services.

8. Plaintiff Carol E. Ball, M.D., is a Board Certified obstetrician and gynecologist licensed to practice medicine in Minnesota, North Dakota, South Dakota, and Wisconsin. She is the Medical Director of Planned Parenthood. As part of her responsibilities as Medical Director, Dr. Ball provides medical services at Planned Parenthood's Sioux Falls health center, including abortion. Dr. Ball sues on behalf of herself and her current and future patients seeking abortion services.

9. Defendant Dennis Daugaard is the Governor of the State of South Dakota. He is responsible, under South Dakota law, to "supervise the official conduct of all executive and ministerial officers" and to "see that the laws of the state are faithfully and impartially executed." S.D. Codified Laws § 1-7-1(1) to (2); *see also* S.D. Const. art. IV, § 3. Defendant Daugaard is sued in his official capacity as Governor of the State of South Dakota.

10. Defendant Marty Jackley is the Attorney General of the State of South Dakota. He is the chief law enforcement officer of the State of South Dakota and is charged by law with prosecuting and defending the interests of the State in any court, any cause or matter, civil or

criminal, "[w]hen requested by the Governor or either branch of the Legislature, or whenever in his judgment the welfare of the state demands." S.D. Codified Laws § 1-11-1(2). He also exercises supervision over the state's attorneys. *Id.* § 1-11-1(5). Defendant Jackley, his employees, agents, and successors in office, are sued in their official capacities.

11.  Defendant Doneen Hollingsworth is the Secretary of Health for the State of South Dakota. She is the "head of the Department of Health." *Id.* § 1-43-2. Under South Dakota law, the Department of Health is responsible for the licensing of abortion facilities. *Id.* § 34-23A-51. The Department of Health "may suspend or revoke a license issued under SDCL chapter 34-23A"—the chapter of South Dakota law governing the performance of abortions—on account of the licensee's "[v]iolation of any of the provisions SDCL chapter 34-23A." S.D. Admin. R. 44:67:01:05(1); S.D. Codified Laws § 34-23A-51 (directing the Department of Health to "adopt rules . . . for the . . . suspension . . . and revocation of a license to operate an abortion facility"). Defendant Hollingsworth, her employees, agents, and successors in office, are sued in their official capacities.

12.  Defendant Margaret Hansen is the Executive Director of the South Dakota Board of Medical and Osteopathic Examiners ("Board"), the agency which is responsible for the licensure of Planned Parenthood's physicians, including Dr. Ball. Under South Dakota law, the Board may "cancel, revoke, suspend, or limit the license . . . of any physician . . . upon satisfactory proof . . . of . . . unprofessional or dishonorable conduct." S.D. Codified Laws § 36-4-29. The Eighth Circuit has held that violation of an abortion statute could be grounds for action by the Board as conduct "unbecoming a person's license to practice medicine." *Planned Parenthood, Sioux Falls Clinic v. Miller*, 63 F.3d 1452, 1467 (8th Cir. 1995) (citing S.D. Codified Laws § 36-4-30(22)). Defendant Hansen is sued in her official capacity as Executive Director of the Board.

4

## THE ACT

13. The Act imposes the longest and most extreme mandatory delay in the country and dramatically expands existing (and also unprecedented) so-called "informed consent" requirements.

14. Under the Act, no abortion may be "scheduled" until at least "seventy-two hours" after the *same* physician who is to perform the abortion conducts a "consultation and assessment" in person with the patient (hereinafter "mandatory delay"). Act, §§ 3 to 4.

15. In addition, as a condition to having an abortion, every woman must comply with the wholly unprecedented and indefensible requirement of disclosing to and discussing with a "pregnancy help center" ("PHC") her most private personal and medical information (hereinafter "PHC mandate"). PHCs must, by statutory definition, be opposed to abortion; they are not subject to any regulation or oversight; and the Act places virtually no standards or restrictions on PHCs. Indeed, the Act expressly states "Nothing in this Act shall be construed to impose *any duties or liabilities* upon a pregnancy help center." *Id.* § 6 (emphasis added).

16. As part of the initial "consultation and assessment," the Act requires physicians to engage in the impossible task of:

(1) identifying, retrieving, and reviewing thousands of articles—dating back forty years and appearing in any of thousands of worldwide journals—for information related to so-called "risk factors" and "complications" as those terms are broadly defined in the Act;

(2) assessing every patient for the infinite list of "risk factors" culled from this enormous body of literature and discussing with the patient the results of the assessment;

5

      (3)     disclosing an equally vast list of "complications" associated with those "risk factors" and the "rate at which those complications occur[]" (collectively hereinafter "risk factors mandate").

*Id.* §§ 3(4) to (6), 7(2) to (3). The Act requires Plaintiffs to conduct this assessment and make the disclosures without regard to the validity of the findings in the articles and without regard to whether the information is applicable to Plaintiffs' patients.

      17.     The Act also requires physicians to assess every woman to determine whether her decision to have an abortion is subject to so-called "coercion, subtle or otherwise" and forbids any coerced abortion. "Coercion" is then defined very broadly to include common situations where the woman's decision is voluntary and not coerced (hereinafter "coercion mandate"). *Id.* §§ 3(1), 7(4).

      18.     Moreover, the Act incorporates the written disclosures required by section 34-23A-10.1(1), Act, § 3(2), many parts of which this Court has enjoined, and which are the subject of ongoing litigation. *See Planned Parenthood Minn., N.D., S.D. v. Rounds*, 650 F. Supp. 972 (D.S.D. 2009), *appeals docketed*, Nos. 09-3231 (8th Cir. Sept. 17, 2009), 09-3233 (8th Cir. Sept. 17, 2009), 09-3362 (8th Cir. Oct. 1, 2009).

      19.     The Act creates a new civil action by the woman or her survivors for damages against Plaintiffs if they fail to comply with any of its requirements, in addition to any damages that the woman or her survivors may be entitled to under any common law or statutory provisions. Act, § 8. The Act creates a presumption that the woman would not have had the abortion if the physician had complied with the Act's requirements. *Id.* § 9(1).

      20.     A health care facility where abortions are performed in violation of the Act faces licensing penalties, including suspension or revocation of its facility license. S.D. Admin. R. 44:67:01:05(1); S.D. Codified Laws § 34-23A-51.

21. A physician who performs an abortion in violation of the Act faces professional discipline, including license suspension or revocation. S.D. Codified Laws § 36-4-29.

22. Failure to comply with section 34-23A-10.1 is a criminal violation. *Id.* § 34-23A-10.2.

23. The primary sponsors of the Act were Representative Roger Hunt and Senator Al Novstrup. South Dakota Legislature, 2011 Session – Bill History, H.B. 1217, http://legis.state.sd.us/sessions/2011/Bill.aspx?Bill=1217.

## FACTUAL ALLEGATIONS

### A. The Act's Improper Purpose

24. The legislature intended to impose severe restrictions on and drastically limit access to abortion in South Dakota. The Act follows in an unrelenting series of efforts by the legislature to ban abortion and impose the most significant impediments to abortion in the country. The legislative record demonstrates that the Act is specifically aimed at making it harder for women to access abortions in the state and for Planned Parenthood, the only provider in the state, to operate.

25. The Act is not a reasonable measure to inform the woman's free choice or to protect her health. First, there is no evidence whatsoever that tripling the 24-hour waiting period considered in *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992), and requiring that the *same* physician who is to perform the abortion conduct the "initial consultation" are reasonable measures to ensure that the woman's decision is informed.

26. Second, the PHC mandate violates the standard of care by forcing every woman to go to a PHC for so-called "counseling" prior to an abortion, without imposing any safeguards or restrictions to ensure that she receives accurate and nonmisleading information.

7

27. Third, the risk factors mandate dramatically departs from the accepted standard for informed consent and would damage patients' ability to make informed decisions.

28. The Act is based on stereotypical and paternalistic views of women.

### B. Plaintiffs and Abortion Services in South Dakota

29. Planned Parenthood's Sioux Falls health center is the only generally available abortion provider in the state of South Dakota. Planned Parenthood schedules surgical abortions through 13.6 weeks of pregnancy as measured from the first day of the woman's last menstrual period ("LMP"). It provides medication abortions through 63 days LMP. For the year March 1, 2010 to February 28, 2011, there were 736 abortions performed at the Sioux Falls health center.

30. There has been no South Dakota abortion provider in more than 10 years, despite ongoing efforts to recruit a local physician. As a result, for more than a decade, in order to ensure that abortion services remain available in South Dakota, Planned Parenthood has had to fly different physicians in from other states to perform abortions. Currently, there are only 3 out-of-state physicians who perform abortions at the Sioux Falls health center. Abortion services are offered approximately only once a week, or 4 to 5 times a month, in Sioux Falls.

31. Women travel to the Sioux Falls health center from all over South Dakota as well as several surrounding states in order to obtain an abortion. Many of Plaintiffs' patients—close to 30 percent—travel more than 150 miles each way to get to the Sioux Falls health center. Approximately 15 percent travel more than 300 miles each way to have an abortion.

32. Many of Plaintiffs' patients are poor. More than half have incomes that are 100 percent or less than the federal poverty level ("FPL") and almost 90 percent live at or below 200 percent of the FPL.

33. Many of the women who seek abortions in Sioux Falls are already mothers, including many single mothers. Many have jobs. Some go to school. Plaintiffs' patients include women who are victims of sexual assault and women who are victims of domestic abuse.

34. As a result of the distances they travel, their limited financial resources, and their obligations to their families, employers, and communities, many of the women seeking abortions in South Dakota already find it very difficult to come to Sioux Falls for the procedure.

35. Many of the women who seek abortions in Sioux Falls are concerned about their confidentiality and are trying to keep their abortions secret from someone in their lives, sometimes because they fear that if those people found out, it would result in harm to the woman.

**C.    The Impact of the Mandatory Delay on Access to Abortion in South Dakota**

36. The mandatory delay will make it extremely difficult, if not impossible, for many of Plaintiffs' patients to have an abortion in South Dakota. Some women will simply be unable to have an abortion at all because they cannot afford to make two trips to Sioux Falls or make the necessary arrangements to miss that much time away from their families, jobs, or other commitments. Many other women will travel further, to an out-of-state provider, in order to make only one trip to get an abortion.

37. The requirement of making two trips, combined with the limited availability of abortions services at the Sioux Falls health center will mean that women are delayed at least one week and possibly as long as a month in having an abortion. This delay will increase the risk of the procedure. For some women who wanted medication abortions, it will push them past the time when that procedure is available. For other women, they will be delayed past the point when abortions are available in South Dakota at all. Some of those women will be able to travel out of

state for a later abortion, but this will mean increased cost (both from a later procedure and for the travel) and increased risk. Others will not.

38. Even if women are able to make two trips to the Sioux Falls health center in time to access the services they desire, they will face increased costs and other problems caused by the need to make a second trip (which will in turn, require more time away from work, school, and their families).

39. The mandatory delay imposes on Plaintiffs and their patients, as part of the informed consent process, and as a condition to abortion, requirements that are not imposed on physicians or patients in any other medical context.

**D.    Additional Facts Related to the PHC Mandate**

40. The PHC mandate imposes on Plaintiffs and their patients, as part of the informed consent process, and as a condition to abortion, requirements that are not imposed on physicians or patients in any other medical context.

41. Upon information and belief, many PHCs in South Dakota are religiously affiliated. The Act furthers PHCs' non-secular agendas and entangles the State with religion by inserting such religious entities in the middle of the state-regulated physician-patient relationship.

**E.    Additional Facts Related to the Risk Factors Mandate**

42. It is impossible to comply with the risk factors mandate. PubMed/MEDLINE is an online, searchable database of approximately 20 million journal articles citations. PsycINFO is a database that covers the psychological literature and includes over 3 million records from approximately 2,500 journals.

43. It is impossible to search every article ever published in the English language after 1972 in at least one peer-reviewed journal indexed by PubMed/MEDLINE or PsycINFO. Second,

10

of the articles on PubMed and PsycINFO that can be searched electronically, there is no way to search the full text of each of those articles and, thus, even the broadest search would not yield every responsive article. Third, even if these limitations did not exist, it would be impossible to craft a comprehensive search that efficiently retrieves responsive articles. Further, it would be virtually impossible to access all the articles that may contain responsive information. Finally, even a review of only a few articles that are potentially responsive makes clear that it would be impossible for Plaintiffs to evaluate patients for every risk factor and disclose every associated complication described in the literature covered by the Act.

44. The risk factors mandate will require Plaintiffs to provide information to patients that is untruthful and/or misleading. This includes (among other examples) information on supposed risk factors, complications, and rates of complications that have been rejected by mainstream medicine; or were found only in methodologically flawed and unreliable studies, or in studies of out-of-date medical practice and procedures.

45. The risk factors mandate on its face imposes requirements that are impossible to meet. If there are certain implicit limitations on the requirements imposed by the risk factors mandate, it is completely unclear what those are. For example, Plaintiffs do not know whether there are any limits on the materials that must be searched or whether physicians can use their medical judgment to determine what information must be included in the patient assessment and discussion.

46. The risk factors mandate imposes on Plaintiffs and their patients, as part of the informed consent process, and as a condition to abortion, requirements that are not imposed on physicians or patients in any other medical context.

### F.     The Coercion Mandate

47.     "Coercion, subtle or otherwise" is so broadly defined in the Act that it would capture many situations in which a woman is seeking abortion voluntarily and without coercion.

48.     The requirement that the physician obtain from the woman the age of the man who she had sex with that resulted in the pregnancy and determine whether any "disparity" in the age between the woman and the man "is a factor in creating an undue influence or coercion" is unclear, based on outdated sex stereotypes, and not something that is taken into consideration in current medical practice.

49.     The coercion mandate imposes on Plaintiffs and their patients, as part of the informed consent process, and as a condition to abortion, requirements that are not imposed on physicians or patients in any other medical context.

### FIRST CLAIM FOR RELIEF
### (The Act – Right to Liberty and Privacy)

50.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 49.

51.     Because the legislature intended to restrict access to abortion and the Act's restrictions are not reasonably related to any legitimate state interest, the Act violates women's right to liberty and privacy guaranteed by the Fourteenth Amendment to the United States Constitution.

### SECOND CLAIM FOR RELIEF
### (PHC Mandate – Freedom of Speech)

52.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 51.

53.     By compelling women seeking abortions to discuss their decision to have an abortion and the circumstances surrounding that decision with a PHC, the PHC mandate violates

12

women's right against compelled speech guaranteed by the First Amendment to the United States Constitution.

### THIRD CLAIM FOR RELIEF
### (PHC Mandate – Informational Privacy)

54. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 53.

55. By requiring women to disclose their identities, pregnancy, and decision to seek an abortion to a PHC, the PHC mandate violates women's right to informational privacy guaranteed by the Fourteenth Amendment to the United States Constitution.

### FOURTH CLAIM FOR RELIEF
### (PHC Mandate – Right to Liberty and Privacy)

56. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 55.

57. The PHC mandate has the effect of imposing an undue burden on women's right to choose abortion in violation of their right to liberty and privacy guaranteed by the Fourteenth Amendment to the United States Constitution.

### FIFTH CLAIM FOR RELIEF
### (PHC Mandate – Establishment Clause)

58. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 57.

59. Because the PHC mandate has the effect of advancing religion, and fosters excessive entanglement with religion, it violates the Establishment Clause of the First Amendment to the United States Constitution.

### SIXTH CLAIM FOR RELIEF
### (PHC Mandate – Equal Protection)

60. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 59.

61. By treating informed consent for abortion differently than for any other medical service or procedure, singling out abortion for onerous regulation, and imposing requirements on women based on outdated sex stereotypes, the PHC mandate violates Plaintiffs' and their patients' rights to equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution.

### SEVENTH CLAIM FOR RELIEF
### (PHC Mandate – Freedom of Speech)

62. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 61.

63. By defining "pregnancy help center" only to include organizations that "routinely consult[] with women for the purpose of helping them keep their relationship with their unborn children" and do not perform, refer for, or associate with any entity that performs abortion, the PHC mandate discriminates on the basis of viewpoint on abortion in violation of Plaintiffs' right to freedom of speech guaranteed by the First Amendment to the United States Constitution.

### EIGHTH CLAIM FOR RELIEF
### (Risk Factors Mandate – Right to Liberty and Privacy)

64. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 63.

65. By imposing impossible requirements on physicians as a condition to performing abortions, the risk factors mandate effectively bans abortion in violation of women's right to liberty and privacy guaranteed by the Fourteenth Amendment to the United State Constitution.

### NINTH CLAIM FOR RELIEF
### (Risk Factors Mandate – Freedom of Speech and Right to Liberty and Privacy)

66. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 65.

67. By requiring the disclosure of untruthful and misleading information to patients, the risk factors mandate violates Plaintiffs' right against compelled speech guaranteed by the First Amendment to the United States Constitution and imposes an undue burden on women's right to choose abortion in violation of their right to liberty and privacy guaranteed by the Fourteenth Amendment to the United States Constitution.

### TENTH CLAIM FOR RELIEF
### (Risk Factors Mandate – Due Process of Law)

68. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 67.

69. By failing to give adequate notice of the conduct proscribed, the risk factors mandate is impermissibly vague in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

### ELEVENTH CLAIM FOR RELIEF
### (Risk Factors Mandate – Equal Protection)

70. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 69.

71. By treating informed consent for abortion differently than for any other medical service or procedure, and singling out abortion for onerous regulation, the risk factors mandate violates Plaintiffs' and their patients' rights to equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution.

### TWELTH CLAIM FOR RELIEF
(Coercion Mandate – Right to Liberty and Privacy)

72.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 71.

73.     By defining "coercion" in unduly broad language, the coercion mandate imposes an undue burden on women's right to choose abortion in violation of their right to liberty and privacy guaranteed by the Fourteenth Amendment to the United States Constitution.

### THIRTEENTH CLAIM FOR RELIEF
(Coercion Mandate – Due Process of Law)

74.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 73.

75.     By failing to give adequate notice of the conduct proscribed, the coercion mandate is impermissibly vague in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

### FOURTEENTH CLAIM FOR RELIEF
(Coercion Mandate – Equal Protection)

76.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 75.

77.     By treating informed consent for abortion differently than any other medical service or procedure, singling out abortion for onerous regulation, and imposing requirements on women based on outdated sex stereotypes, the coercion mandate violates Plaintiffs' and their patients' rights to equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution.

### FIFTEENTH CLAIM FOR RELIEF
### (Mandatory Delay – Right to Liberty and Privacy)

78. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 77.

79. The mandatory delay has the effect of imposing an undue burden on women's right to choose abortion in violation of their right to liberty and privacy guaranteed by the Fourteenth Amendment to the United States Constitution.

### SIXTEENTH CLAIM FOR RELIEF
### (Mandatory Delay – Equal Protection)

80. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 79.

81. By treating informed consent for abortion differently than for any other medical service or procedure, singling out abortion for onerous regulation, and imposing requirements on women based on outdated sex stereotypes, the mandatory delay violates Plaintiffs' and their patients' rights to equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution.

### INJUNCTIVE RELIEF

82. If the Act is allowed to take effect, Plaintiffs and their patients will be subject to irreparable harm for which no adequate remedy at law exists.

83. Enforcement of the Act will cause irreparable harm by, among other violations of their constitutionally protected rights as outlined in the claims for relief above, depriving Plaintiffs' patients of their constitutional right to decide whether to have a child, as well as their patients' and physicians' First Amendment freedoms and their patients' right to informational privacy, and subjecting Plaintiffs and their physicians to significant licensing penalties, including revocation of

Planned Parenthood's license to operate a health care facility in Sioux Falls and its physicians' licenses to practice medicine, as well as criminal and civil penalties.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs ask this Court:

A. To enter a judgment declaring that the Act violates the United States Constitution on its face and/or as applied to Plaintiffs and their patients.

B. To issue such interim injunctive relief as may be necessary to maintain the status quo pending award of a final judgment, and a permanent injunction restraining Defendants, their employees, agents, and successors in office from enforcing the Act on its face and/or as applied to Plaintiffs and their patients.

C. To award Plaintiffs their attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

D. To grant such other and further relief as the Court deems just and proper.

Dated: May 27, 2011

/s/ Stephen D. Bell

Stephen D. Bell (SD Bar #3488)
Dorsey & Whitney LLP
1400 Wewatta Street, Suite 400
Denver, Colorado 80202
Telephone: (303) 629-3405
bell.steve@dorsey.com

Michael Drysdale*
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402
Telephone: (612) 340-2600
drysdale.michael@dorsey.com

Mimi Liu*
Diana O. Salgado*
Planned Parenthood Federation of America
1110 Vermont Avenue, NW, Suite 300

Washington, District of Columbia 20005
Telephone: (202) 973-4862
mimi.liu@ppfa.org; diana.salgado@ppfa.org

Roger K. Evans*
Planned Parenthood Federation of America
434 West 33rd Street
New York, New York 10001
Telephone: (212) 261-4708
roger.evans@ppfa.org

Brigitte Amiri*
Andrew D. Beck*
American Civil Liberties Union
Reproductive Freedom Project
125 Broad Street, 18th Floor
New York, New York 10004
Telephone: (212) 519-7897
bamiri@aclu.org; abeck@aclu.org

*Application for admission *pro hac vice* forthcoming

ATTORNEYS FOR PLAINTIFFS

Robert Doody (SD Bar #3668)
ACLU of South Dakota
401 East 8th Street, Suite 226
Sioux Falls, South Dakota 57103
Telephone: (605) 332-2508
rdoody@aclu.org

OF COUNSEL FOR PLAINTIFFS