**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH DAKOTA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **PLANNED PARENTHOOD MINNESOTA,** ) | |
| **NORTH DAKOTA, SOUTH DAKOTA, and** ) | |
| **CAROL E. BALL, M.D.;** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **CIVIL CASE NO. 11-4071-KES** |
| ) | |
| **DENNIS DAUGAARD, Governor,** ) | |
| **MARTY JACKLEY, Attorney General,** ) | |
| **DONEEN HOLLINGSWORTH, Secretary of** ) | |
| **Health, Department of Health, and** ) | |
| **ROBERT FERRELL, M.D., President,** ) | |
| **Board of Medical and Osteopathic Examiners,** ) | |
| **in their official capacities,** ) | |
| ) | |
| **Defendants.** ) | |

**PLAINTIFFS' RESPONSE TO MOTION OF ALPHA CENTER AND**
**BLACK HILLS CRISIS PREGNANCY CENTER D/B/A CARE NET**
**PREGNANCY RESOURCE CENTER TO INTERVENE**

The proposed intervenors Alpha Center and Black Hills Crisis Pregnancy Center (together, "CPCs") inexplicably delayed until after the critical preliminary injunction stage to move to intervene of right. In addition, the CPCs have not established anything but purely speculative interests in this case and have failed to rebut the presumption of adequate representation by the State. The CPCs therefore are not entitled to intervene and their motion should be denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Act was passed on March 2, 2011 and signed by the Governor on March 22, 2011. At that time, there was no doubt that this litigation would ensue. *See, e.g.*, S. Floor Debate, H.B. 1217, 2011 Leg. Reg. Sess. 28 (March 2, 2011) (statement of sponsor Sen. Novstrup) (" . . . the State of

South Dakota will not pay money for this *when there is a lawsuit*") (emphasis added);[1] S. Health & Human Servs. Comm. Hr.'g, H.B. 1217, 2011 Leg., Reg. Sess. 70-72 (Feb. 28, 2011) (statement of sponsor Rep. Hunt) (discussing litigation costs); *see* John Hult, *Alpha Center Files to Become Pregnancy Help Center*, Argus Leader, May 28, 2011, http://www.argusleader.com/article/ 20110528/NEWS/105280301/S-D-sued-abortion-law ("lawmakers who passed House Bill 1217 in March anticipated such a lawsuit during debate on the bill"), *id.* (sponsor Rep. Hunt stating "I don't think it's a surprise to anyone that they've filed a lawsuit . . . . We've been expecting this and preparing for it."); Mary Garrigan, *Pregnancy Centers Wait Out Daugaard's Decision*, Rapid City Journal, March 17, 2011, http://rapidcityjournal.com/news/article_cab7966e-5032-11e0-a45b-001cc4c002e0.html (Planned Parenthood stating that it planned to sue if the Governor signs the Act). Nor were the CPCs either unaware of this or silent about their intentions to be involved. *See* David Montgomery, *Daugaard Signs 3-day Wait for Abortion Into Law*, Rapid City Journal, March 22, 2011, http://rapidcityjournal.com/news/article_47dd9ff4-54a1-11e0-90c7-001cc4c03286.html (Leslee Unruh of Alpha Center stating "[W]e'll see [Planned Parenthood] in court.").

As expected, two months later, on May 27, 2011, Plaintiffs filed a complaint seeking declaratory and injunctive relief against the Act. (Docket No. 1.) Again, the CPCs made clear that they "plan[ned] to assist in the state's defense on the new lawsuit." John Hult, *Alpha Center Files to Become Pregnancy Help Center*, Argus Leader, May 28, 2011, http://www.argusleader.com/ article/20110528/NEWS/105280301/S-D-sued-abortion-law; *see also* John Hult, *S.D. Sued on Abortion Law,* Argus Leader, May 28, 2011, http://www.argusleader.com/article/20110528/NEWS/ 105280301/S-D-sued-abortion-law (CPCs' lawyer discussing their planned "filings in this case").

---

[1] A copy of the legislative history is attached as Exhibit A to the previously filed Declaration of Mimi Liu (Docket No. 10-2).

Yet, inexplicably, the CPCs (at least as proposed intervenors) were not heard from further. On June 3, 2011, Plaintiffs moved for a preliminary injunction to prevent the State from enforcing the Act pending the outcome of the litigation.  (Docket No. 10.)  On June 20, 2011, the State responded with an 86-page brief and multiple declarations, arguing that each of Plaintiffs' constitutional claims are without merit.  (Docket No. 32.)  The CPCs were, indeed, actively involved in assisting the State in its defense, supplying declarations as well as exhibits of their "policies and procedures."[2]  *See* Decl. of Kimberly Martinez (Docket No. 32-4); Decl. of Stacey A. Wollman (Docket No. 32-6).  On June 30, 2011, after a lengthy hearing in which the parties presented oral argument, this Court granted Plaintiffs' motion.  *Planned Parenthood Minn., N.D., S.D. v. Daugaard*, No. CIV. 11-4071-KES, 2011 WL 2582731 (D.S.D. June 30, 2011).  The next day the CPCs filed this motion to intervene.

ARGUMENT

## I.   THE CPCS HAVE NOT SHOWN THAT INTERVENTION OF RIGHT IS WARRANTED

Rule 24(a) of the Federal Rules of Civil Procedure states that a party seeking intervention of right must (1) upon timely application establish that (2) it has a recognized interest in the subject matter of the litigation that might be impaired by the disposition of the case and that (3) will not be adequately protected by the existing parties.  *See* Fed. R. Civ. P. 24(a).  A party seeking to intervene of right must also establish Article III standing.  *See United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 833 (8th Cir. 2009).  The CPCs have not demonstrated that they meet the Rule 24(a) criteria or Article III standing and, thus, are not entitled to intervention of right.[3]

---

[2] And those declarations listed the CPCs as "Applicants for Intervention."

[3] The CPCs do not argue for permissive intervention.  *See* Mem. of Law Supp. Mot. Intervention of Alpha Center and Care Net Pregnancy Resource Center (Docket No. 40-11) ("CPCs' Br.") at 24

## A.       The CPCs' Motion Is Not Timely

The determination of timeliness is committed to the sound discretion of the district court, *United States v. Associated Milk Producers, Inc.*, 534 F.2d 113, 115 (8th Cir. 1976), and the circumstances here support exercising that discretion to deny intervention.  The CPCs' argument that their motion is timely is relegated to a single footnote in which they claim there is no issue of timeliness because their motion "is being filed within a month of when the action was commenced."[4]  CPCs' Br. at 24 n.5.  But timeliness is a concept, not a constant, and the concept requires a consideration of a number of factors, including not only how far the litigation has progressed; but also the movant's prior knowledge of the pending action and the reason for the delay in seeking intervention.  *See United States v. Ritchie Special Credit Invs.*, 620 F.3d 824, 832 (8th Cir. 2010).  These factors demonstrate that the CPCs' motion is untimely.[5]  Because timeliness is a threshold issue, *Ritchie Special Credit Invs.*, 620 F.3d at 832, the CPCs' motion must be denied.

In the five weeks from the time the complaint was filed until the CPCs moved to intervene, substantial litigation occurred.  Plaintiffs moved for a preliminary injunction, challenging each of the Act's mandates, and extensive briefing and supporting declarations were filed by both sides. The Court held a hearing and issued a lengthy order granting a preliminary injunction against each of the challenged mandates.  *See* Factual and Procedural Background, *supra*.  Courts have held that the failure to intervene until after the grant of a preliminary injunction, or even on the eve of a

---

(arguing only for intervention of right pursuant to Rule 24(a)).  But, in any event, permissive intervention should be denied as well for the reasons stated herein.

[4] The CPCs did not file their motion "within a month"; they filed their motion on July 1, 2011, or five weeks after Plaintiffs brought this action and, curiously, on the day immediately following the Court's order granting the preliminary injunction.

[5] The likelihood of prejudice to the parties is also relevant, *see id.*, though not a prerequisite to a determination of timeliness, *see ACLU of Minn. v. Tarek ibn Ziyad Acad.*, -- F.3d --, 2011 WL 2637701, at *4 (8th Cir. July 7, 2011).

preliminary injunction, supports denial of intervention.  *See Ark. Elec. Energy Consumers v. Middle*

*S. Energy, Inc.*, 772 F.2d 401, 403 (8th Cir. 1985) (denying motion for intervention filed 12 days

after commencement of action where a hearing already has been held and temporary restraining

order issued); *MasterCard Intern. Inc. v. Visa Intern. Service Ass'n, Inc.*, 471 F.3d 377, 390-91 (2d

Cir. 2006) (denying motion for intervention filed on "the eve of the preliminary injunction

hearing"); *see also Ritchie Special Credit Invs.*, 620 F.3d at 832 (citing *Arkansas Electric Energy*

*Consumers* for point that court has denied motions for intervention in cases "with far less docket

activity").

    The CPCs' prior knowledge of the impending action and the filing of the litigation

combined with their failure to offer any justification for waiting until the day after the Court granted

a preliminary injunction to move to intervene further demonstrate that their motion is untimely.  The

CPCs knew that this lawsuit was coming long before the complaint was filed.  It was clear from day

one that the State would be sued if the bill were enacted.  Planned Parenthood confirmed shortly

after the Act was passed that it planned to sue.  Around that time—that is, three-and-a-half months

before they finally moved to intervene—the CPCs were already stating publicly that they would

"see [Planned Parenthood] in court."  And, indeed, when the lawsuit was filed, the CPCs reiterated

that they "plan[ned] to assist in the state's defense on the new lawsuit."  *See* Factual and Procedural

Background, *supra*.  Moreover, the CPCs no doubt knew that once the complaint was filed, there

would be expedited litigation leading up to the Act's July 1 effective date.

    Yet, the CPCs offer no explanation for their delay.  The Eighth Circuit is clear that where "a

party had knowledge of all the facts . . . and failed to raise the issue when first presented with an

opportunity to do so, subsequent intervention is untimely."  *Ritchie Special Credit Invs.*, 620 F.3d at

833 (holding that proposed intervenor had opportunities to move to intervene sooner, including one

day after it learned of the action that it alleged affected its interests); *see also NAACP v. New York*, 413 U.S. 345, 360, 367 (1973) (motion to intervene untimely when filed seventeen days after intervenor had actual knowledge that intervention was necessary).  Here, the CPCs had months to prepare and ample time to file their motion after the complaint was filed.

In addition to the fact that this delay is unjustified given the CPCs knew for months that this lawsuit was coming and knew that the preliminary injunction proceedings would be expedited, this delay is also unjustified in light of the CPCs' own arguments supporting intervention.  The CPCs assert they have significant interests that will be harmed if they are not permitted to intervene.  *See* CPCs' Br. at 17-23, 25-31.  Their delay past the critical preliminary injunction stage—when they knew that the grant of a preliminary injunction in these circumstances could enjoin the law for years, as with the litigation over the 2005 so-called "informed consent" law, *see Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724 (8th Cir. 2008) (en banc)—in the face of such alleged harm is both mystifying and unjustified.  *See MasterCard Intern. Inc.*, 471 F.3d at 391 ("considering that [proposed intervenor] argued . . . that it has a significant interest in this litigation that will be gravely prejudiced if the matter proceeds in its absence, the district court could properly find [its] delay unjustified").[6]

B.     **The CPCs Do Not Have Article III Standing Or Any Recognized Interest That May Be Impaired By This Case**

To demonstrate Article III standing, a plaintiff must "clearly allege facts showing an injury in fact, which is an injury to a legally protected interest that is 'concrete, particularized and either

---

[6] If this Court finds that the CPCs' delay does not render their motion untimely as to any further proceedings in this Court, it is nonetheless untimely as to the preliminary injunction.  The preliminary injunction has been issued, and any notice of appeal must be filed before briefing on this motion is even complete, much less a decision rendered.  The CPCs' delay is inexcusable as a general matter and certainly as to any effort to insert themselves as a party at this belated stage for purposes of participating in any appeal of or further proceedings on the preliminary injunction.

actual or imminent.'"  *Metro. St. Louis Sewer Dist.*, 569 F.3d at 833-34.  "The purpose of the imminence requirement is 'to ensure that the alleged injury is not too speculative . . . [and] that the injury is certainly impending.'"  *Id.* at 834 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 n.2 (1992).  Likewise a "recognized interest in the subject matter of the litigation" for purposes of Rule 24(a) is one that is "direct, substantial, and legally protectable."  *Standard Heating & Air Conditioning Co. v. City of Minneapolis*, 137 F.3d 567, 571 (8th Cir. 1991) (citation omitted).  The CPCs have not established any interest in the case that is direct as opposed to purely speculative.

The CPCs allege four interests in the litigation: (1) an increase in the number of clients they will see; (2) an interest in their reputations; (3) an interest in being able to continue to function; (4) avoiding exposure to civil liability from prior clients and donors.  *See* CPC's Br. at 25.  The CPCs' do not assert that these interests relate to anything other than Planned Parenthood's challenge to the Act's "pregnancy help center" mandate ("PHC mandate").  *See id.* at 36 (arguing that the State may not adequately represent their interests because it could "conced[e] the validity of the [PHC] requirement").  None of the CPCs' alleged interests are sufficient to support intervention here.

With respect to the first stated interest, the CPCs themselves do not seriously argue that they have any interest in "clients" who are forced against their will to come to their facility for so-called "counseling" and information, as the Act requires.  *See* Act, § 3(3).  Indeed, the CPCs call the PHC mandate a "referral," *see, e.g.*, CPCs' Br. at 28, but if the Act only required a "referral," the CPCs could suffer no actual injury warranting intervention because the law already requires that Plaintiffs give patients the name and contact information for a "pregnancy help center," *see* S.D. Codified Laws § 34-23A-10.1(2)(c), and, thus, "[i]f the woman wishes to consult with a pregnancy help center . . . she is free to do so," *Daugaard*, 2011 WL 2582731, at *6.

But, the PHC mandate is compulsory.  To the extent the CPCs do claim to have an interest in "clients" who are forced to use their services, that interest is tied to their self-professed "principle mission": to help those women "keep and raise their children."  Decl. of KimberlyMartinez (Docket No. 40-1) ¶ 7.  But the CPCs have utterly failed to demonstrate that they can or have helped any woman seeking an abortion who was forced to use their services against her will; as this Court has already found, such a requirement is likely to have the opposite effect, that is, "to cause the woman to reject the information outright."  *Daugaard*, 2011 WL 2582731, at *7.  Thus, any injury they would suffer by not being able to help those women is purely speculative.

Second, the CPCs' alleged "reputational" interests in this case are also speculative.  This litigation is about the Act compelling women to go to entities that meet a specific definition that amounts to being opposed to abortion and/or opposed to the woman's decision to seek an abortion.  *See* Act, § 5; *see also Daugaard*, 2011 WL 2582731, at *4 & n.4.  Thus, any supposed "harm" to the CPCs' reputation by being labeled in this way is the result of their decision to be listed on the State registry and to affirm that they meet the definition of a "pregnancy help center," and not the result of the litigation.  Further, Plaintiffs have not alleged that any "pregnancy help center" in fact gives false and misleading information, fails to protect patients' confidentiality, or acts on ideology as the CPCs argue.  *See* CPCs' Br. at 30.  Instead, Plaintiffs' challenge to the PHC mandate, as their preliminary injunction papers demonstrate, is that, however virtuous any particular "pregnancy help center" may be, the *Act*'s lack of safeguards and requirements renders the mandate unconstitutional.  *See, e.g.*, Mem. Supp. Pls.' Mot. Prelim. Inj. (Docket No. 10-1) at Parts I.C. and I.D.  Even where the government, including the courts, have been permitted to be involved in the abortion decision, the courts have demanded adequate safeguards on the face of the statute, *see id.*, and no one would argue that such requirements impugn the reputation of the government or the courts.

The CPCs' third and fourth purported interests—continuing to function and not being sued—hinge entirely on their allegation that this lawsuit will impugn their reputation.  *See* CPCs' Br. at 30-31.  Thus, for the reasons discussed above, those interests are also speculative.  In any event, the CPCs have provided no concrete evidence demonstrating that their fear of being sued is anything but wholly speculative.

### C.     The CPCs Have Failed To Overcome The Presumption Of Adequate Representation By The State

Where, as here, the State is a party to a suit and the case concerns a matter of "sovereign interest," the "bar is raised," and the State "is presumed to adequately represent the interests of *all* its citizens."  *Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir. 1996).  To rebut this presumption, the would-be intervenor must make a "strong showing of inadequate representation," *Little Rock Sch. Dist. v. N. Little Rock Sch. Dist*., 378 F.3d 774, 780 (8th Cir. 2004) (denying intervention because intervenor failed to overcome presumption of adequate representation); *Curry v. Regents of the Univ. of Minn.*, 167 F.3d 420, 423 (8th Cir. 1999) (same); *Mausolf*, 85 F.3d at 1303 ("very strong showing" required), which it can do only if it can demonstrate a "clear dereliction of duty" on the part of the sovereign, *Chiglo v. City of Preston*, 104 F.3d 185, 188 (8th Cir. 1997), or that its interests "cannot be subsumed within the public interest represented by the government entity," *Little Rock*, 378 F.3d at 780 (citation omitted). The proposed intervenor must show "that its interests actually differ from or conflict with the government interests." *South Dakota ex rel. Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 786 (8th Cir. 2003) (denying intervention where movant failed to assert any specific interests that the government would not adequately represent).  A "merely theoretical risk of conflicting legal duties," *id.*, does not satisfy this burden.

As an initial matter, the CPCs do not even attempt to overcome the presumption of adequate representation by showing a "clear dereliction of duty" on the part of the State in defending this action. *Chiglo*, 104 F.3d at 188. Nor could they. The State mounted a full-scale defense of the Act at the preliminary injunction stage, just as they have vigorously and repeatedly defended the constitutionality of abortion regulations in the past. Further, the CPCs' decision to collaborate with the State, by providing two declarations on which the State relied heavily in opposing the preliminary injunction, reveals their own belief that the State's representation of their interests was more than sufficient. *See* Factual and Procedural Background, *supra*. In the event of an appeal of the preliminary injunction, the CPCs would be limited to the arguments advanced by the State in the district court. *See, e.g.*, *Morrow v. Greyhound Lines, Inc.*, 541 F.2d 713, 724 (8th Cir. 1976) ("It is old and well-settled law that issues not raised in the trial court cannot be considered by this court as a basis for reversal."). Thus, by delaying until after the preliminary injunction proceeding, the CPCs have all but conceded that the State can adequately represent their interests in the litigation.

Moreover, the CPCs cannot overcome the presumption that the State adequately represents them because they have not met their burden of showing that their interests diverge from the State's. To the extent the CPCs have legally protectable interests in increasing their "clients" and in their reputations,[7] those interests are one and the same as the State's interests in defending the Act. The requirement that women seeking an abortion go to a PHC is central to the Act. *See* Act, §§ 1(4), 3(3), 5, 6, 7(1). Further, the State has demonstrated a strong interest in defending the CPCs' reputations, including relying heavily on the CPCs' declarations and

---

[7] As explained above, the CPCs' alleged interests in continuing to function and avoiding lawsuits from former clients and donors hinge entirely on their alleged interest in their reputations.

"policies and procedures," to support the State's interest in requiring that women go to these entities.[8]

The CPCs' assertion that the State has an interest in "the protection of pregnant women" that somehow diverges from the CPCs' interest, *see* CPCs' Br. at 35-36, is absurd:  The PHC mandate is one of the central "procedures"—if not *the* central procedure—"establish[ed]" by the legislature to purportedly protect women.  Act (Title).  Indeed, the legislative findings single out the PHCs as "of significant value" to the purported interest of protecting women.  Act, § 1(4). Further, the CPCs themselves argue that the PHC mandate is precisely what the legislature concluded is required to purportedly protect women:  Specifically, they assert the legislature concluded that "full protection of [the woman's] interests would be achieved *if and only if* the screening was done by [a pregnancy help center]," that the PHCs are "the only way" women will get "sufficient information," and that they are "especially qualified" to protect women.  CPCs' Br. at 5-6 (emphasis added).  For the CPCs to turn around and argue that the State's interest is not to defend the requirement that women go to the PHCs is nothing more than a transparent attempt to manipulate their way into a case where their interests are no doubt adequately represented.

The State's half-hearted statement that it "may not" adequately protect the CPCs' interests because their interests are somehow "different," *see* Resp. State Defs. Mot. Intervene (Docket No. 44) at 4-5, despite its clear interest in, and vigorous defense of, the PHC mandate, "is sheer persiflage.  Here as in many other contexts, actions speak louder than words." *Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 208 (1st Cir. 1998).  The State's assertion does not alter the Court's adequacy of representation analysis:  "Neither the [State's] support of and

---

[8] Indeed, the State has vigorously defended the CPCs and vouched for their procedures. *See, e.g.,* State's Br. Opp'n Pls.' Mot. Prelim. Inj. (Docket No. 32) at 47, 65-66, 67, 70, 72.

consent to the [proposed intervenors'] desire to intervene, nor the [State's] insinuations that they, alone, are not up to the task of defending the Plan, can strip a federal court of the right and power—indeed, the duty—to make an independent determination as to whether Rule 24(a)(2)'s prerequisites are met." *Id.* (citing cases).

Further, all the harms alleged by the CPCs would flow from the invalidation of the PHC mandate.  As a result, the State's interests in defending the action and the CPCs' interests are the same: to uphold the PHC mandate.  This is precisely the same circumstances as in *Curry*, where the Eighth Circuit held that the student organizations that sought to intervene did not meet their burden of showing that the University would inadequately represent their interests:

> The Movants characterize their interest as a concern that they will lose funding . . . while characterizing the University as merely interested in upholding the current fee system. The Movants potentially may lose funding, however, only if the fee system is not upheld.  Thus, although the Movants' motives may be distinguishable from the University's, the Movants' and the University's interests are the same: both want the current fee system upheld.

167 F.3d at 423.[9]  Under these circumstances, the CPCs have wholly failed to meet their burden of demonstrating that their "interests at risk in the litigation are not shared by the general citizenry." *Little Rock*, 378 F.3d at 780, and the Court should find the State's representation of the CPCs' interests adequate.

*Planned Parenthood Minnesota, North Dakota, South Dakota v. Alpha Center*, 213 F. App'x. 508 (8th Cir. 2007), an unpublished opinion that is "not precedent," 8th Cir. Local R. 32.1, is not to the contrary.  There, the Eighth Circuit permitted intervention in the previous

---

[9] The CPCs attempt to distinguish *Curry* by claiming that the Court's ruling was based on the fact that all of the intervenors' asserted interests were also held insufficient as a matter of law, leaving only their "naked litigation goal" as the interest that needed representation by the State. CPCs' Br. at 37.  This is simply wrong.  In reaching the decision on adequate representation, the Court clearly considered the interests asserted by the proposed intervenors, as the above quote demonstrates.

challenge to continue because of concern about prejudice to the CPCs, who were, after nearly a year and a half in the case, full participants in the litigation.  They had participated in "discovery and motions practice by filing their own legal submissions and conducting their own depositions and helped develop all the issues in the case" and were to be "full participants" in the appeal of the preliminary injunction.  *Alpha Center*, 213 F. App'x. at 510.  Thus, the Court concluded that the State did not adequately represent Intervenors' interests "*[a]t this point in the litigation*."  *Id.* (emphasis added).  There is nothing there to suggest that intervention is required here, where the CPCs have not yet participated in this matter, and the State has, and will, continue to adequately represent their interests.

The cases cited by the CPCs also do not make their case for intervention.  Indeed, two of the cases cited by the CPCs, *Sierra Club v. Robertson*, 960 F.2d 83 (8th Cir. 1992), and *Kansas Public Employees Retirement System v. Reimer & Koger Associates, Inc.*, 60 F.3d 1304 (8th Cir. 1995), are completely inapposite: in both cases, there was no presumption of adequate representation because the intervenors in those cases sought to intervene on the side of private parties.  Similarly, in *Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action*, 558 F.2d 861 (8th Cir. 1977), although there were government defendants, those government defendants were not acting in the interests of the sovereign because they were "exposed to . . . risk of personal liability and [were] defending . . . charges of discrimination [and] bad faith," and therefore had "enough to do to defend themselves against the charges leveled against them by the plaintiffs."  *Id.* at 870.

Finally, *United States v. Union Electric Co.,* 64 F.3d 1152 (8th Cir. 1995), cited by the CPCs even though they acknowledge that it is "distinguishable on the facts," CPCs' Br. at 33, and *Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994 (8th Cir. 1993), also fail

to support intervention here.  In *Union Electric*, the Eighth Circuit concluded that the EPA did not adequately represent non-settling PRPs in a CERCLA action because the Court concluded that "the EPA would be shirking its duty were it to advance [the non settling PRPs] narrower interest [in minimizing their liability] at the expense of its representation of the general public interest" in cleaning up polluted sites.  64 F.3d at 1170.  Similarly, in *Mille Lacs*, the intervenors' interests in their property values diverged from the State's interest in protecting fish and game stocks, and under those circumstances, the State's representation was found inadequate.  989 F.2d at 1000-01 (applying the "rationale of *Dimond v. District of Columbia*," where the court concluded that the sovereign representation is inadequate where it "would be shirking its duty were it to advance [the intervenor's] narrower interest at the expense of its representation of the general public interest").  By contrast, given that the centrality of the PHC mandate and the resulting overlapping of interests, the State does not "shirk" any of its duties as sovereign by also representing the CPCs' interests, and the State's representation of those interests will be more than adequate.

## II.    IF THIS COURT GRANTS INTERVENTION OF RIGHT, CONDITIONS ON INTERVENTION ARE WARRANTED

Intervention is intended to advance judicial economy and ensure the efficient and fair adjudication of disputes implicating the interests of multiple parties.  To that end, district courts are afforded discretion to impose terms of intervention necessary to manage the litigation and protect all parties from potentially duplicative and burdensome filings.  As the Advisory Committee Notes to Rule 24 explain:  "An intervention as of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to requirements of efficient conduct of the pleadings."  Fed. R. Civ. P. 24, Advisory Committee Notes, 1966 Amendment.

There is ample justification for imposing reasonable restrictions on the participation of the CPCs if they are allowed to intervene.  The CPCs' involvement in Plaintiffs' challenge to the 2005 so-called "informed consent" law demonstrates that they delay litigation, duplicate the State's efforts, and serially disregard court rules and orders, to the great burden of the Court and the other parties.  This led Plaintiffs in the 2005 litigation to move to terminate their intervention, which this Court granted, finding:

> [T]he discovery and motions practice in this case has indicated that Intervenors unduly delay the litigation by unreasonably duplicating the efforts of State.  This pattern likely will continue, and perhaps get worse, as the case gets closer to and during the trial . . . . The development of this case . . . has indicated that intervention has only resulted in unnecessary duplication.

*Planned Parenthood Minn., N.D., S.D. v. Rounds*, No. 05-4077, 2006 WL 2092595, at *12 (D.S.D. July 26, 2006).

After the Eighth Circuit reinstated the CPCs' intervention (on other grounds), *Alpha Center*, 213 Fed. App'x. at 510, their conduct, if anything, worsened.  In summary judgment briefing, they filed papers flagrantly in violation of the local rules.  This led Plaintiffs to move to strike their filings, and the Court agreed the filings were improper, ordering the CPCs to correct and re-file.  *See Planned Parenthood Minn., N.D., S.D. v. Rounds*, No. 05-4077, 2009 WL 73797 (D.S.D. Jan. 7, 2009).  The CPCs then failed to correct many of the violations, prompting another motion to strike, which the Court granted in part.  *See Planned Parenthood Minn., N.D., S.D. v. Rounds*, No. 05-4077, 2009 WL 2600544 (D.S.D. Aug. 20, 2009).  Astonishingly, the CPCs then utterly ignored the Court's ruling on appeal.  The CPCs did not appeal the order, but, among other things, liberally cited to stricken material throughout their brief to the Eighth Circuit, compelling yet another round

of wearying correction motions practice on appeal.  *See* Pls.' Mot. Strike Intervenors' Br., *Planned Parenthood Minn., N.D., S.D. v. Rounds*, No. 09-3231 (8th Cir. Apr. 2, 2010).[10]

There is no indication that the CPCs' behavior in this litgation will be any different.  In this—their *first* filing here—they again disregard the rules.  Throughout the CPCs' memorandum, including in their twenty-page so-called "Statement of Facts," the CPCs make numerous factual allegations, *see, e.g.*, CPCs' Br. at 4-6, 13-23, 28-31, 34, without *any* citation beyond a single footnote stating that they rely on the more than a hundred pages of declarations and exhibits filed in support of their motion.  *See* CPCs' Br. at 13 n.3.  It is well-established that it is not the duty of the Court to scour the record to find those specific references and places the parties deem relevant.  "Judges are not like pigs, hunting for truffles buried in briefs."  *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

In light of these practices, if this Court concludes that intervention of right is appropriate, it should impose conditions on the CPCs' participation in the action.  "It is now a firmly established principle that reasonable conditions may be imposed even upon one who intervenes as of right."  *Beauregard, Inc. v. Sword Servs. L.L.C.*, 107 F.3d 351, 352-53 (5th Cir. 1997).  These restrictions should fall both upon the *scope* and *form* of the CPCs' filings.  As to scope, the CPCs should be limited to filings that relate to whatever interests the Court finds sufficient to justify intervention.  While the Eighth Circuit does not appear to have addressed district courts' authority to limit intervenors' participation to those interests that formed the basis for intervention, this authority follows as a matter of logic from the structure and purpose of Rule 24(a) and has been recognized in many other circuits.  As stated by the Tenth Circuit, sitting *en banc*:

---

[10] Plaintiffs' motion to strike the CPCs' Eighth Circuit filings was taken under advisement by the merits panel and remains pending.  *See* Order, April 23, 2010, *Planned Parenthood Minn., N.D., S.D. v. Rounds*, No. 09-3231 (8th Cir. Arp. 23, 2010).

> If the applicant is granted intervention because of an interest that may be injured by the litigation, it does not follow that the intervention must extend to matters not affecting that interest; and just because no party will adequately represent one particular interest of the applicant does not mean that the applicant must be allowed to participate in the litigation of other matters concerning which its interests *are* adequately represented.

*San Juan County, Utah v. United States,* 505 F.3d 1163, 1189 (10th Cir. 2007) (*en banc*); *see also United States v. S. Fla. Water Mgmt. Dist.,* 922 F.2d 704, 707 & n.4 (11th Cir.) ("A nonparty may have a sufficient interest for some issues in a case but not others, and the court may limit intervention accordingly."), *cert. denied,* 502 U.S. 953 (1991); *Harris v. Pernsley,* 820 F.2d 592, 599 (3d Cir. 1987) (stating that an applicant for intervention "may have a sufficient interest to intervene as to certain issues in an action without having an interest in the litigation as a whole"), *cert. denied*, 484 U.S. 947 (1987); *Bradley v. Milliken*, 620 F.2d 1141, 1142-43 (6th Cir.1980) (ordering intervention "for the limited purpose of presenting evidence" on a single issue, but restricting participation on other issues to the extent that the district court would choose to allow the applicants to serve as *amici*).  Specifically, the Court should limit the scope of the CPCs' participation to Plaintiffs' challenge to the PHC mandate—the only requirement to which the four asserted interests of the CPCs relate.  *See* Part I.B, *supra*.

Second, the Court should require the State and the CPCs to file joint papers (including motions, responsive filings, briefs, statements of fact, declarations, affidavits, and other evidence) on all matters in which they take the same position.  *See, e.g.*, *Earthworks v. U.S. Dep't of Interior*, No. 09-01972, 2010 WL 3063143, at *2 (D.D.C. Aug. 3, 2010) (slip opinion) (granting intervention of right but requiring consultation with federal defendants and restricting presentation to arguments not advanced by other parties).  This requirement will substantially reduce the duplication of evidence and argument that have marked the State's and CPCs' conduct since commencement of the 2005 litigation, and reflects the close coordination and

cooperation the State and the CPCs have routinely exhibited.[11]  In addition, a joint briefing requirement should have the salutary effect of policing the CPCs' compliance with the local rules and orders of the Court.  The State has not exhibited the same disregard of such requirements as the CPCs, and joint briefing will help ensure that the CPCs' submissions comply with such elemental practices as appropriate citation to record evidence, page limitations, and minimization of the CPCs' historic practice of stuffing the record with extraneous material.

A threshold joint briefing requirement would not unduly limit the CPCs' rights, because the CPCs could file separately on issues for which they certify that they have consulted with the State and have determined that the State takes an opposing view of the issue from the CPCs or takes no position.  Indeed, such a requirement would crystallize for the Court where the State and the CPCs take different positions, which has not historically always been clear.  Consequently, a joint briefing requirement is well within the Court's powers under Rule 24, and well-justified in this case.

Likewise, and particularly in light of the CPCs' duplicative efforts in discovery in the 2005 litigation, *see* Pls.' Mem. Supp. Mots. Am. Compl. and Terminate Intervention, *Planned Parenthood Minn., N.D., S.D. v. Rounds*, No. 05-4077 (D.S.D. Apr. 25, 2006); *Rounds*, 2006 WL 2092595, at *12, this Court should limit the CPCs from initiating "unilateral, independent discovery without leave of the court" and should require a conference prior to any discovery being commenced to establish guidelines for the CPCs' participation.  *United States v. Duke Energy Corp.*, 171 F. Supp. 2d 560, 565 (M.D.N.C. 2001).

---

[11] As explained above, the most recent example being that the State filed two declarations from the CPCs in opposing Plaintiffs' motion for a preliminary injunction.  There can be no doubt that the State and the CPCs have been in close coordination in this litigation as they were in the 2005 litigation.

## CONCLUSION

For the foregoing reasons, the CPCs' motion to intervene of right should be denied.  If this Court grants intervention of right, it should impose the conditions on intervention as discussed above.

Dated:  July 22, 2011

/s/ Stephen D. Bell_____
Stephen D. Bell (SD Bar #3488)
Dorsey & Whitney LLP
1400 Wewatta Street, Suite 400
Denver, Colorado 80202
Telephone: (303) 629-3405
bell.steve@dorsey.com

Michael Drysdale
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402
Telephone: (612) 340-2600
drysdale.michael@dorsey.com

Mimi Liu
Diana O. Salgado
Planned Parenthood Federation of America
1110 Vermont Avenue, NW, Suite 300
Washington, District of Columbia 20005
Telephone: (202) 973-4862
mimi.liu@ppfa.org; diana.salgado@ppfa.org

Roger K. Evans
Planned Parenthood Federation of America
434 West 33rd Street
New York, New York 10001
Telephone: (212) 261-4708
roger.evans@ppfa.org

Brigitte Amiri
Andrew D. Beck
American Civil Liberties Union
Reproductive Freedom Project
125 Broad Street, 18th Floor
New York, New York 10004

Telephone: (212) 519-7897
bamiri@aclu.org; abeck@aclu.org

ATTORNEYS FOR PLAINTIFFS

Robert Doody (SD Bar #3668)
ACLU of South Dakota
401 East 8th Street, Suite 226
Sioux Falls, South Dakota 57103
Telephone: (605) 332-2508
rdoody@aclu.org

OF COUNSEL FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I, Stephen D. Bell, hereby certify that on the 22nd day of July, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

/s/ Stephen D. Bell
Stephen D. Bell