UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| PLANNED PARENTHOOD MINNESOTA, NORTH DAKOTA, SOUTH DAKOTA, and CAROL E. BALL, M.D., | ) ) ) ) ) | CIV. 11-4071-KES |
| Plaintiffs, | ) ) | ORDER GRANTING APPLICANTS' MOTION TO INTERVENE |
| vs. | ) ) ) | |
| DENNIS DAUGAARD, Governor, MARTY JACKLEY, Attorney General, DONEEN HOLLINGSWORTH, Secretary of Health, Department of Health, and ROBERT FERRELL, President, Board of Medical and Osteopathic Examiners, in their official capacities, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| ALPHA CENTER and BLACK HILLS CRISIS PREGNANCY CENTER, d/b/a Care Net Pregnancy Resource Center, | ) ) ) ) ) | |
| Applicants for Intervention. | ) | |

Alpha Center and Black Hills Crisis Pregnancy Center, applicants for

intervention (applicants), move to intervene as a matter of right in this case.

Docket 40. Plaintiffs, Planned Parenthood Minnesota, North Dakota, South

Dakota, and Dr. Carol E. Ball, oppose the motion. Docket 45. Defendants, Governor Dennis Daugaard, Attorney General Marty Jackley, Secretary Doneen Hollingsworth, and Board President Robert Ferrell, in their official capacities, have no objection to intervention. Docket 44. For the reasons set forth below, applicants' motion to intervene is granted.

## BACKGROUND

In the 2011 legislative term, the South Dakota Legislature adopted House Bill 1217 (the Act), which provided additions to the State's existing "informed consent" abortion law requirements. H.B. 1217, 2011 Leg., Reg. Sess. (S.D. 2011), to be codified at SDCL 34-23A. The Act established additional procedures that abortion providers must follow prior to performing any abortion in South Dakota to insure that the woman's choice is voluntary, uncoerced, and informed. After the governor signed the bill into law, plaintiffs filed a complaint on May 27, 2011, challenging the constitutionality of the Act on the grounds that it violates the First Amendment's Free Speech Clause and Establishment Clause and the Fourteenth Amendment's Due Process Clause and Equal Protection Clause. Docket 1. Plaintiffs filed a motion for a preliminary injunction on June 3, 2011, to enjoin enforcement of the Act prior to its effective date of July 1, 2011. Docket 10. This court granted plaintiffs' preliminary injunction on June 30, 2011. Docket 39. The next day, applicants moved to intervene. Docket 40.

2

The relevant sections of the Act that pertain to this motion are sections 3, 5, and 6. Section 3 requires physicians who meet with women considering abortions to refer them to a pregnancy help center.[1] Section 5 outlines what a pregnancy help center is, what it does, and how to register as one under the Act. Specifically, those businesses who want to be considered a pregnancy help center under the Act have to register with the State to be eligible. After they are listed on the registry then these centers may receive the referrals of pregnant women who, under the Act, must receive an assessment prior to obtaining an abortion. Section 6 identifies what the pregnancy help center is required and permitted to do during this consultation. Docket 39 at 6. Section 6 also identifies the topics that should be explored during the pregnancy help center referral, including checking for signs of coercion and ensuring the

_____

[1] The definition of a "pregnancy help center" under the Act is:

> any entity . . . that has as one of its principal missions to provide education, counseling, and other assistance to help a pregnant mother maintain her relationship with her unborn child and care for her unborn child, which entity has a medical director who is licensed to practice medicine in the state of South Dakota, or that it has a collaborative agreement with a physician licensed in South Dakota to practice medicine to whom women can be referred, which entity does not perform abortions and is not affiliated with any physician or entity that performs abortions, and does not now refer pregnant mothers for abortions, and has not referred any pregnant mother for abortions for the three-year period immediately preceding July 1, 2011[.]

H.B. 1217, Section 7 (to amend chapter SDCL 34-23A).

3

woman is informed of all her options. Finally, this section outlines the procedures for when and how a pregnancy help center may report back to the referring doctor, if necessary.

Applicants are two of the three pregnancy help centers who have registered with the State to obtain referrals under the Act. Applicants successfully intervened in a similar case before this court with nearly identical parties on a similar legislative challenge. *See Planned Parenthood Minn., N.D., S.D. v. Rounds*, Civ. 05-4077-KES, 2005 WL 2338863 (D.S.D. Sept. 23, 2005). Applicants argue that their interests and potential injuries have only grown since the *Rounds* case, and intervention is essential to protecting these interests.

## DISCUSSION

To successfully intervene, applicants must show that they have Article III standing and that they should be allowed to intervene as a matter of right under Federal Rule of Civil Procedure 24(a). In this case, applicants argue that they have Article III standing, their motion to intervene is timely, the State cannot adequately represent their interests, and the motion to intervene should be granted. Docket 40-11 at 6-7. Plaintiffs contend that applicants' interests do not satisfy Article III standing or Rule 24(a), their motion is untimely, and the State will adequately represent their interests. Therefore, plaintiffs ask the court to deny the motion to intervene.

4

## I.     Article III Standing

Beyond having to fulfill the requirements of Rule 24 to intervene, parties also have to establish Article III standing to litigate claims in federal court. *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 833 (8th Cir. 2009) (citation omitted). "To show Article III standing, a [party] has the burden of proving: (1) that he or she suffered an 'injury-in-fact,' (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision." *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000) (citation omitted).

Injury in fact "is an injury to a legally protected interest that is 'concrete, particularized, and either actual or imminent,' " and the injury must be imminent "to ensure that the alleged injury is not too speculative[.]" *Metro. St. Louis Sewer Dist.*, 569 F.3d at 834 (citations omitted). The denial of a benefit can amount to an injury-in-fact. *See Oti Kaga, Inc. v. S.D. Hous. Dev. Auth.*, 342 F.3d 871, 878 (8th Cir. 2003) (finding sufficient injury in a standing analysis through the wrongful denial of tax credits). Damage to a business interest can also be sufficient injury for standing purposes *S.D. Farm Bureau, Inc. v. Hazeltine*, 340 F.3d 583, 592 (8th Cir. 2003) (stating that loss of business due to the enforcement of an amendment to the South Dakota Constitution satisfied standing requirements).

If the court eventually rules in favor of plaintiffs in this case then applicants are in danger of being actually or imminently injured because applicants will lose clients and business in a number of different ways. *S.D. Farm Bureau, Inc.*, 340 F.3d at 592. If the statute is enjoined, applicants will lose the referrals that the law would require, which would amount to an estimated 85 to 90 percent of all women who consider abortion. Docket 40-11 at 33. This loss in potential referrals amounts to a loss in a benefit, which is sufficient injury. *Oti Kaga*, 342 F.3d at 878. Additionally, any loss of clientele to these centers frustrates the primary purpose or mission[2] of the businesses, which is to counsel pregnant women and ensure that they make voluntary and informed decisions about their potential relationships with their unborn children. *See Granville House, Inc. v. Dep't of Health & Human Servs.*, 715 F.2d 1292, 1298 (8th Cir. 1983) (determining that the frustration of the organization's primary purpose of serving indigent clients coupled with its economic injury was sufficient to confer standing to litigant).

---

[2] The Executive Director of Alpha Center, one of the applicants, stated that its mission is to "help pregnant women keep and raise their children." Docket 40-1 at ¶ 7. Additionally, the pregnancy help centers intend "to help [women] make a voluntary decision, free from coercion and to understand what resources and help is available in order to help them keep and raise their children, if that is what they truly prefer to do." *Id.* at ¶ 14. The Executive Director of the Black Hills Crisis Pregnancy Center noted that one of its main purposes is to "properly inform a pregnant mother about facts that are essential for her to make an informed and voluntary decision about whether or not to exercise her right to keep her relationship with her child . . . ." Docket 40-3 at ¶ 7.

The court's prior decision in *Rounds* is instructive because it was a previous dispute involving substantially the same parties. 2005 WL 2338863, at *1. *Rounds* also involved a challenge to portions of South Dakota's informed consent law, and applicants in this case moved to intervene in that suit as well. *Id.* At the time of the *Rounds* decision, applicants were not formally identified as pregnancy help centers under the challenged statute. But in its standing analysis, the court determined that applicants were in immediate danger of sustaining a direct injury because they could lose the Act's referrals. *Id.* at *2. In this case, now that both applicants have registered and are eligible to receive referrals under the Act, their interests and potential injuries have multiplied. These interests and potential injuries are sufficient to satisfy injury in fact for standing purposes.

Applicants also satisfy the traceability element of standing. "Traceability requires proof of causation, showing the injury resulted from the actions of the defendant 'and not . . . [from] the independent action of some third party not before the court.' " *Oti Kaga,* 342 F.3d at 878. There is a causal connection between applicants' proposed injuries of loss of clients or frustration of their mission and plaintiffs' attempt to enjoin the statute. If the court rules in plaintiffs' favor then applicants will not receive the benefit of client referrals anticipated under the new law. *See S.D. Farm Bureau, Inc. v. South Dakota*, 189 F.R.D. 560, 563 (D.S.D. 1999) (determining that applicants met the

7

second requirement for standing because if the court struck down the amendment then it would directly cause applicants' injury).

The third factor is satisfied because the alleged injury would be redressed by a favorable decision from this court. If the court eventually finds for the State and the statute goes into effect, then applicants will receive the referrals that will increase their clientele and other business interests would not be affected. *See Am. Civil Liberties Union of Minn. v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1093 (8th Cir. 2011) (determining the redressability factor is met because applicants' alleged injury, impingement of religious freedom, would be redressed by a judicial determination). Accordingly, applicants have satisfied all three elements of standing.

## II.   Intervention As A Matter of Right

"Rule 24(a) expressly requires that a motion to intervene be 'timely.' " *United States v. Union Elec. Co.*, 64 F.3d 1152, 1158 (8th Cir. 1995). "Under Rule 24(a)(2), a party is entitled to intervene as a matter of right upon filing a timely motion if:

(1)   [the applicant] has a cognizable interest in the subject matter of the litigation,

(2)   the interest may be impaired as a result of the litigation, and

(3)   the interest is not adequately protected by the existing parties to the litigation.

8

*Med. Liab. Mut. Ins. Co. v. Alan Curtis L.L.C.*, 485 F.3d 1006, 1008 (8th Cir. 2007) (citation omitted). The Eighth Circuit has stated that Rule 24 should be construed liberally, and the court will resolve any doubt in favor of the applicant for intervention. *Kan. Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 60 F.3d 1304, 1307 (8th Cir. 1995) (internal citations omitted). Whether a motion to intervene is timely is a threshold issue that must be satisfied. *United States v. Ritchie Special Credit Invs., Ltd.*, 620 F.3d 824, 832 (8th Cir. 2010) (citation omitted).

### A.    Timeliness of Applicants' Motion

Plaintiffs claim that applicants' motion to intervene is untimely because applicants knew well in advance that this case would be filed, and applicants waited to move to intervene until after substantial briefing, declarations, and a ruling on the preliminary injunction motion occurred. Applicants counter that their motion is timely and reasonable because they filed the motion a month after the complaint was filed, and the litigation had not substantially progressed. Applicants also claim that they had good cause for delay.

" 'Timeliness' under Rule 24 is a matter committed to the discretion of the trial court, and that court's determination can be reversed only if it is an abuse of discretion." *United States v. Associated Milk Producers, Inc.*, 534 F.2d 113, 115 (8th Cir. 1976) (citations omitted). The Eighth Circuit has directed courts to consider all the circumstances of the case and three main relevant

factors to determine timeliness: (1) "how far the litigation has progressed at the time of the motion for intervention"; (2) "the prospective intervenor's prior knowledge of the pending action"; (3) "the reason for the delay in seeking intervention"; and (4) "the likelihood of prejudice to the parties in the action." *Ritchie Special Credit Invs., Ltd.*, 620 F.3d at 832 (citations omitted).

First, applicants filed the motion to intervene early in the litigation. Plaintiffs filed the complaint on May 27, 2011, and the motion for preliminary injunction was filed on June 3, 2011. Docket 1; Docket 10. Applicants filed their motion to intervene on July 1, 2011, a little over a month after the action began and immediately after the court granted plaintiffs' motion for a preliminary injunction.

Second, the court considers applicants' knowledge about the pending action. Applicants admit that they had some knowledge that this action would commence, but they had no proof that it certainly would proceed and did not know the timing. Plaintiffs claim that this is an instance when "a party had knowledge of all the facts . . . and failed to raise the issue when first presented with an opportunity to do so;" therefore, their subsequent intervention is untimely. Docket 45 at 5. Even though applicants knew this claim was likely to proceed, applicants did not have "knowledge of all the facts" until plaintiffs filed their complaint.

10

Applicants explain that it took time and substantial steps for each to conclude that they could and would intervene. Each had to meet with its governing board to determine whether to request to be added to the state's registry for pregnancy help centers, to develop their procedures for distinguishing clients under the Act,[3] to obtain legal advice, and to wade through other administrative issues. Docket 49 at 7-9. Applicants could not authorize filing the motion until the State confirmed placement on the registry and their procedures were in place. *Id.* at 9. Applicants did not receive notice that they were placed on the registry until June 6, 2011, which was three days after the motion for a preliminary injunction was filed. Docket 49 at 18. Then both had to develop internal procedures on how to treat clients referred under the Act, which took more than three weeks to complete. *Id.* at 10. And, as already mentioned, applicants' interests were not implicated until after the preliminary injunction was granted because at the time it was filed, applicants were not recognized as pregnancy help centers under the Act. Applicants'

---

[3] Applicants stated that future clients obtained under the Act are referred to as the "1217 clients." Docket 40-11 at 16. Applicants state that they had to develop a new process for these clients through which they "limit what can be discussed during the consultations to the topics set out in the Act, namely information about the resources available to assist the women if they should decide to continue the pregnancy, as well as discussion of the circumstances that would indicate that she is being subjected to coercion in connection with the decision about whether to have an abortion." *Id.* at 21. The procedures also limit discussions on religion, attempt to ensure confidentiality, and mandate that 1217 and regular clients remain separate. *Id.* at 21-22.

explanation for their delay is reasonable under the circumstances. *See Rounds*, 2005 WL 2338863, at *3 (determining that applicants' delay in filing the motion was attributable to obtaining each's board approval to proceed with the intervention).

Even though intervention was sought after the preliminary injunction was granted, applicants filed the motion as soon as it was practicable. The litigation had not progressed to a point where it would harm the parties litigating. There has not been a Rule 26 conference, and discovery has not been delayed by intervention. *See Rounds*, 2005 WL 2338863, at *3 (discussing the discovery deadline being four months away in determining that the motion to intervene was timely). And because of *Rounds*, plaintiffs had notice that applicants may intervene again. For these reasons, the court finds the motion to intervene is timely because the time between filing the complaint and the motion to intervene was slight, the litigation had not progressed to a substantial degree, and applicants had a legitimate reason for delay. *See Taylor v. Southwestern Bell Tele. Co.*, 251 F.3d 735, 741 (8th Cir. 2001) (stating that although the intervenors filed the motion to intervene eleven days after the court granted the preliminary injunction, they acted promptly and had good reason for delay).

### B.   Applicants' Interest

The Eighth Circuit has stated that an applicant's interest needs to be "significantly protectable" or "legally protectable" and that merely economic interests are not the proper basis for intervention. *See Metro. St. Louis Sewer Dist.*, 569 F.3d at 838-39; *Med. Liab. Mut. Ins. Co.*, 485 F.3d at 1008. While the applicant cannot base its intervention on an injury or interest that is remote or speculative, "the intervention may be based on an interest that is contingent upon the outcome of the litigation." *Union Elec. Co.*, 64 F.3d at 1162 (citations omitted). This prong of the test is construed broadly, and parties that are affected by the cause of action should be included if it is practicable. *See id.* at 1162 ("The court should be mindful that '[t]he interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned parties as is compatible with efficiency and due process.").

As previously discussed under the standing analysis, applicants have a significant or legally protectable interest in the legitimacy of the Act because their primary mission of counseling pregnant women, particularly those who are contemplating abortion, would be impeded by striking down the Act. *See Granville House*, 715 F.2d at 1297 (stating that there was an injury when an organization's primary mission was impeded). Applicants are two of the three centers registered in South Dakota, and they estimate the referral of at least

700 new clients between them each year as a result of the Act. Docket 49 at 22. These referrals will increase applicants' clientele and will help applicants fulfill their mission; therefore, applicants have a recognizable interest in this court's determination of the legitimacy of the Act. *See Rounds*, 2005 WL 2338863, at *3 (stating that the referral interest and impediment to the centers' primary mission was a sufficient interest to support intervention even though applicants were not yet pregnancy help centers under the Act). These injuries are sufficient to establish that applicants have a cognizable interest in the subject matter being litigated.

### C.      Impairment of Applicants' Interest

As the Eighth Circuit has consistently held, this factor of the intervention test "requires only that disposition of the action 'may as a practical matter impair or impede the applicant's ability to protect [its] interest.' " *Kan. Pub. Emps. Ret. Sys.*, 60 F.3d at 1307 (citation omitted). While applicants do not have to show that their interests would be impaired without intervention because of stare decisis, collateral estoppel, or res judicata, applicants must show that their interests " 'may be' so impaired." *Id.* at 1308.

As previously discussed, applicants' interest will be impaired if the legislation is struck down because as beneficiaries of H.B. 1217's "referral provision, applicants have an interest in the statute's enforceability . . . ." *Rounds*, 2005 WL 2338863, at *3; *see also Aventure Commc'n Tech., L.L.C. v.*

14

*Iowa Utils. Bd.*, 734 F. Supp. 2d 636, 650-51 (N.D. Iowa 2010) ("Plainly, whatever interests [applicants] have in continuation of . . . the new regulations, those interests may be impaired, if this litigation results in a preliminary or permanent injunction on implementation of those new regulations."). It is also likely that applicants would have a hard time defending the legitimacy of the Act in a separate and distinct proceeding because the court's ruling in this matter would be persuasive authority. *See Rounds*, 2005 WL 2338863, at *4 (finding that same applicants would struggle to defend the Act in a different action because the decision would be "highly persuasive authority") (citation omitted). Applicants have shown that their interests may be impaired and they may not be able to defend those interests without intervention.

### D.     Inadequate Protection By Existing Parties

To establish whether existing parties adequately represent the proposed intervenor, the court should compare "the interests of the proposed intervenor with the interests of the current parties to the action." *Sierra Club v. Robertson*, 960 F.2d 83, 86 (8th Cir. 1992). When one of the parties is a State and the case is one concerning a "sovereign interest," then the State is "presumed to adequately represent the interests of all its citizens." *Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir. 1996) (quoting *Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994, 1000 (8th Cir. 1993)). That

15

presumption may be rebutted, however, when the intervenor makes a "strong showing of inadequate representation." *Little Rock Sch. Dist. v. N. Little Rock Sch. Dist.*, 378 F.3d 774, 780 (8th Cir. 2004). Applicants may rebut that presumption with a showing that their interests are distinct from the general citizenry. *See Mille Lacs Band*, 989 F.2d at 1000-01. There also must be a showing that the proposed intervenor's "interests actually differ from or conflict with the government's interests." *South Dakota ex rel. Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 786 (8th Cir. 2003) (citation omitted).

The State of South Dakota's interest in enacting the legislation and defending its legitimacy is to insure that women receive adequate information of all their options when considering abortion and that they are not coerced into making those decisions. Even if the State's interest in enacting the legislation may align with applicants' primary missions, that is not the end of the inquiry. Applicants also want to use the Act to increase their clientele. The State "can hardly be expected to litigate" with applicants' increase in clientele and the resulting increase in financial support in mind, so the State cannot adequately represent applicants' interests. *See Union Electric Co.*, 64 F.3d at 1170 (concluding that because applicants were protecting a more parochial financial interest than the general citizenry, the EPA could not be expected to litigate with its interests in mind). For this reason, applicants have rebutted the presumption that the State can afford them adequate representation in the

proceedings, and applicants have shown that only they can protect their unique and narrow interest.

Finally, applicants and plaintiffs disagree as to the weight to be given to the Eighth Circuit's decision in a related action involving similar parties. After this court allowed applicants to intervene in the *Rounds* decision, their intervention of right was later terminated. On appeal of that specific issue, the Eighth Circuit concluded that applicants should not have been terminated from the claim. *See Planned Parenthood Minn., N.D., S.D. v. Alpha Center*, 213 Fed. App'x 508 (8th Cir. 2007). Plaintiffs argue that this unpublished opinion is not binding precedent under the rules of the Eighth Circuit. They are correct that it is not binding authority, but this court finds the per curiam opinion persuasive.

The Eighth Circuit determined that termination was inappropriate in *Alpha Center* because:

> [applicants] have potential reputational and financial interests beyond their interest in obtaining referrals which this litigation could impair . . . . The issues [applicants] raise . . . are different from those which the state officials raise, and the interests which they have at stake in this litigation are not identical to those which the state seeks to protect. At this point in the litigation we see merit in [applicants'] contention that the state officials cannot adequately represent their interests.

*Id.* at 510. The panel's reasoning and conclusion in *Alpha Center* supports applicants' intervention in this claim, particularly because applicants' interests have only intensified since registering as official pregnancy help

17

centers under the Act. For that reason, *Alpha Center* provides additional weight to applicants' argument for intervention.

As previously discussed, Rule 24 is to be construed broadly to include as many parties as practicable to achieve the goals of judicial economy. Applicants fulfilled this broad rule and established standing while also satisfying all of the elements of intervention as a matter of right. Accordingly, their request for intervention is granted.

## III.   Restrictions on Applicants' Participation

Plaintiffs argue that restrictions should be imposed upon applicants if they are allowed to intervene because in the *Rounds* case applicants delayed the litigation, duplicated efforts, disregarded the court's orders and rules, and were a burden upon all parties. Docket 45 at 15. Applicants argue that there is no feasible way to protect their interests and restrict their participation at the same time. Docket 49 at 27. Applicants also argue that because the portion of the Act that implicates their interests is so interwoven into plaintiffs' challenges, it would be impossible to discern when and how applicants should participate. *Id.* at 27-28.

The committee notes to Rule 24 provide that "[a]n intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings." Fed. R. Civ. P. 24, Advisory Committee Notes,

18

1966 Amendments. The Eighth Circuit has not determined whether reasonable restrictions can be placed upon parties who intervene as a matter of right. Other circuits have determined that as long as the conditions or restrictions are appropriate, that even those intervening as a matter of right may be restricted to afford "efficient conduct of the proceedings." *San Juan County, Utah v. United States*, 503 F.3d 1163, 1189 (10th Cir. 2007). *See also Beauregard, Inc. v. Sword Servs., LLC*, 107 F.3d 351, 352-53 (5th Cir. 1997) ("It is now a firmly established principle that reasonable conditions may be imposed even upon one who intervenes as of right."); *Columbus-Am. Discovery Group. v. Atl. Mut. Ins. Co.*, 974 F.2d 450, 479 (4th Cir. 1992) (citing *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 383 (1987) (Brennan, J., concurring)).

The court finds that reasonable restrictions on applicants' involvement in this action are warranted. The restrictions will address both the scope of applicants' involvement, as well as the form in which applicants are to participate. First, applicants' interests are only invoked when there is a challenge to the pregnancy help center mandate. The State can adequately represent applicants' interest in any other area that does not relate to the pregnancy help center mandate. Applicants' participation in this action is, therefore, restricted to challenges to Sections 3, 5, and 6 of the Act.

Additionally, when the State and applicants take the same position on an issue, they must confer and file joint documents that represent them both. *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 20-21 (D.D.C. 2010); *Earthworks v. U.S. Dep't of Interior*, No. 09-01972, 2010 WL 3063143, *2 (D.D.C. Aug. 3, 2010). If applicants and the State disagree, then applicants will certify that they take an opposing stance on an issue and may file separately. This restriction extends to filing motions, responsive filings, briefs, statements of fact, declarations, affidavits, and other documents that pertain to the case. Applicants also are restricted from initiating unilateral, independent discovery and must obtain permission from the magistrate judge or the district court before engaging in independent discovery. *United States v. Duke Energy Corp.*, 171 F. Supp. 2d 560, 565 (M.D.N.C. 2001). Prior to the commencement of discovery, the parties will participate in a conference with the magistrate judge to establish more precise boundaries of applicants' participation. These conditions are reasonable considering the history and complexity of this case and will help the court proceed efficiently.

## IV.   Oral Argument

Due to the court's findings above, oral argument on the issue is unnecessary. Accordingly, applicants' request for oral argument is denied.

## CONCLUSION

Applicants have established Article III standing to litigate their claims in federal court. Applicants also timely established all the factors necessary to intervene as a matter of right in this case. The court has placed reasonable restrictions on applicants' participation to increase the efficiency of the litigation. Therefore, it is

ORDERED that applicants' motion to intervene (Docket 40) is granted.

IT IS FURTHER ORDERED that applicants' request for oral argument is denied.

IT IS FURTHER ORDERED that the parties will schedule a discovery conference with the magistrate judge to establish guidelines for applicants' participation.

IT IS FURTHER ORDERED that applicants and the State confer and file joint briefings on all issues for which they agree.

IT IS FURTHER ORDERED that applicants obtain permission of the magistrate judge or district court before beginning any unilateral or independent discovery.

Dated December 27, 2011.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE

21